IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| ARGONAUT-MIDWEST<br>INSURANCE COMPANY, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | CIVIL ACTION FILE NO.<br>5:19-cv-00239 |
| MOHAMMED HASAN ODEH and<br>MAYSON ENTERPRISE, LLC, | )<br>)<br>) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Argonaut-Midwest Insurance Company (AMIC) files this Complaint for Declaratory Judgment.

## PARTIES

1.

AMIC is incorporated under the laws of Illinois with its principal place of business in Illinois. AMIC seeks a declaration of its coverage obligations, if any, owed under a commercial auto insurance policy.

2.

Defendant Mohammed Hasan Odeh is a citizen of North Carolina who seeks coverage from AMIC for claims arising from an auto collision. Odeh may be served at his residence at 3012 Britmass Drive, Raleigh, North Carolina 27676.

3.

Defendant Mayson Enterprise, LLC is a citizen of North Carolina, where its sole member Odeh is a citizen, and also seeks coverage from AMIC for claims arising from an auto collision. Mayson may be served through its registered agent Mohammed Odeh at 3012 Britmass Drive, Raleigh, North Carolina 27676.

## **JURISDICTION**

4.

There is complete diversity of citizenship between Plaintiff, who is a citizen of Illinois for purposes of federal court jurisdiction, and Defendants who are citizens of North Carolina for purposes of federal court jurisdiction.

5.

Upon information and belief, the amount in controversy exceeds $75,000.

6.

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. Section 1332.

7.

Defendants are each subject to the personal jurisdiction of this Court.

8.

There is an actual case or controversy regarding AMIC's coverage obligations, if any, under a commercial auto insurance policy supporting a declaratory judgment pursuant to 28 U.S.C. Section 2201.

9.

Venue is proper in the Western Division of the Eastern District of North Carolina, where defendants reside. 28 U.S.C. Section 1391.

## FACTS

10.

Defendants claim that Odeh was operating a 2011 Lotus Evota on April 4, 2017, when he was involved in an automobile accident with a vehicle operated by Julie Moore.

11.

Defendants promptly made a claim against GEICO Insurance Company, the liability carrier for Julie Moore, seeking to recover for both damage to the vehicle and injuries sustained by Odeh.

12.

By letter dated April 6, 2017 -- just two days after the accident occurred -- GEICO advised Defendants that "the Property Damage arising out of this accident

may exceed the Property Damage limits of our insured's policy." A true and complete copy of GEICO's letter is attached as Exhibit A.

13.

On September 26, 2018, Odeh executed a release of the property damage claim in exchange for the $25,000 limit available under Moore's policy issued by GEICO. A true and complete copy of Defendants' release of the property damage claim is attached as Exhibit B.

14.

Separate from the property damage claim, Odeh has made a claim for his injuries allegedly sustained in the accident. As of the date of the filing of this civil action, Odeh is continuing to pursue his claim against Moore for his injuries with GEICO.

15.

Odeh first notified AMIC of the accident on December 18, 2018, when he stated he wanted to make "an underinsured claim" under a Policy issued to Mayson as the named insured, an automobile dealership that Odeh owns. The notification was over 20 months after the accident occurred and almost 2 months after Odeh signed the release of his property damage claim with GEICO. Odeh provided the notice the day after he had resolved a separate claim against AMIC for uninsured coverage.

16.

Odeh's stated reason for the delay in notice to AMIC was that he was not aware until that time that Moore's limits were insufficient to resolve his claims.

17.

AMIC conducted an investigation during which it learned that Odeh had purchased the Lotus in December 2016 from Automania, LLC and continued to own and possess the vehicle until April 2018, when he transferred the title to Rafael Lopez. A true and complete copy of the Title Certification by the North Carolina Division of Motor Vehicles is attached as Exhibit C.

18.

As part of its investigation, AMIC asked Odeh to sign a release of his medical records so it could evaluate his claim for injuries arising from the accident. However, Odeh repeatedly refused to execute the medical release requested by AMIC.

19.

On May 6, 2019, Odeh asserted that he also seeks collision coverage under the Policy.

20.

On May 17, 2019, AMIC advised Odeh that the claims for property damage to the Lotus and for his injuries were not covered by the terms of the Policy issued

- 5 -
Case 5:19-cv-00239-D   Document 1   Filed 06/12/19   Page 5 of 13

to Mayson and that he had breached notice and cooperation provisions in the Policy that were conditions precedent to coverage. A true and complete copy of AMIC's letter of May 17, 2019, is attached as Exhibit D.

## INSURANCE POLICY PROVISIONS

21.

AMIC issued Commercial Auto Policy No. GP8228913 to Mayson as the named insured for the period of August 12, 2016, to August 12, 2017. A true and complete copy of the Policy is attached as Exhibit E.

22.

The Policy was delivered in North Carolina such that its terms are construed under North Carolina law.

23.

The GARAGE COVERAGE FORM in the Policy contains conditions that must be satisfied before coverage can be provided, including requirements that AMIC receive "prompt notice of the accident;" that the insured "[c]ooperate with [AMIC] in the investigation or settlement of the claim;" and that the insured "[a]uthorize [AMIC] to obtain medical records or other pertinent information."

24.

The GARAGE COVERAGE FORM provides "collision coverage" as follows:

We will pay for 'loss' to a covered 'auto' or its equipment under:

***

c. Collision Coverage

Caused by:

(1) The covered "auto's" collision with another object; or
(2) The covered "auto's" overturn.

25.

For purposes of collision coverage, "covered auto" is defined by reference to Symbol 31 in the Declarations page which in turn is defined in the GARAGE COVERAGE FORM as "[any 'autos' and the interests in these 'autos' described in Item Seven of the Declarations." Item Seven, in turn, indicates that Physical Damage coverage applies to "[y]our interest in covered 'autos' you own."

26.

The GARAGE COVERAGE FORM provides that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations."

27.

The term "loss" is defined in the GARAGE COVERAGE FORM as "direct and accidental loss or damage. But for Garagekeepers Coverage only, 'loss' also includes any resulting loss of use."

28.

The terms of the GARAGE COVERAGE FORM are modified by an endorsement entitled NORTH CAROLINA UNINSURED MOTORISTS COVERAGE (UM Form) which grants the following coverage:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of;
>
> a. An "uninsured motor vehicle" because of "bodily injury" sustained by the "insured" and caused by an "accident"; and
> b. An "uninsured motor vehicle", as defined in Paragraphs a. and c. of the definition of "uninsured motor vehicle", because of "property damage" caused by an "accident".
>
> The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

29.

The term "insured" in the UM Form in defined as follows when the named insured is a limited liability company:

> a. Anyone "occupying" a covered "auto" or temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
> b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "Insured."
>
> c. The Named Insured for "property damage" only.

30.

For purposes of the UM Form, the term "covered autos" is referenced in the declarations page of the Policy as Symbol 26, which is defined in the GARAGE COVERAGE FORM as:

Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorist Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

31.

The term "uninsured motor vehicle" for purposes of the UM Form includes an "underinsured motor vehicle" defined as follows:

> An underinsured motor vehicle is a land motor vehicle or "trailer for which the sum of all bodily injury liability bonds or policies at the time of an "accident" provides at least the amounts required by the North Carolina Motor Vehicle Safety and Responsibility Act, but their limits are either
>
> (1) Less than the limits of underinsured motorists coverage applicable to a covered "auto" that the Named Insured owns involved in the "accident";
>
> (2) Less than the limits of this coverage, If a covered "auto" that the Named Insured owns is not involved in the "accident"; or
>
> (3) Reduced by payments to others injured in the "accident" to an amount which Is less than the Limit of Insurance for this coverage.
>
> However, an underinsured motor vehicle does not include a "covered auto" unless the limit of Uninsured Motorists Coverage shown in the Declarations or Schedule is greater than the Limit of Insurance for Liability Coverage shown In the Declarations of this policy.

32.

Consistent with North Carolina law, there is no underinsured coverage for claims of property damage in the UM Form. See N.C. GEN.STAT. § 20-279.21.

33.

The UM Form provides underinsured coverage for claims of bodily injury only if:

    a. The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

    b. A tentative settlement has been made between an "insured" and the Insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" and we:

        (1) Have been given prompt written notice of such tentative settlement; and
        (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

## COUNT I – BREACH OF CONDITIONS PRECEDENT TO COVERAGE

34.

Defendants breached the notice provision in the Policy by failing to notify AMIC "promptly" of the accident of April 4, 2017. Instead, AMIC's first notice was on December 18, 2018, the day after Defendants had resolved a separate claim with AMIC.

35.

By refusing to execute a release of Odeh's medical records despite repeated requests by AMIC, Defendants breached the Policy conditions that they cooperate with AMIC in the investigation of the claim and that they authorize AMIC to obtain medical records.

36.

Defendants' breaches of these conditions was not in good faith. Alternatively, AMIC has been materially prejudiced in its ability to investigate Defendants' claims for coverage.

37.

The Court should declare that AMIC does not owe coverage for Defendants' claims due to lack of full compliance with the conditions precedent to coverage in the Policy.

**COUNT II – ABSENCE OF SUBSTANTIVE COVERAGE UNDER THE UM FORM**

38.

Defendants are not "insureds" as defined in the UM Form because the Lotus does not meet the definition of a "covered auto" within the Policy.

39.

Even if Defendants were "insureds" as defined in the UM Form, there are no provisions for underinsured coverage for claims of property damage in the UM Form.

40.

Even if Defendants were "insureds" as defined in the UM Form, AMIC would not owe coverage because the bodily limit of the GEICO policy has not been exhausted.

41.

In the alternative that Defendants' breaches of the Policy conditions do not void coverage, the Court should declare that AMIC does not owe coverage pursuant to the provisions of the UM Form.

**<u>COUNT III – ABSENCE OF COLLISION COVERAGE</u>**

42.

The Lotus is not a "covered auto" within the scope of the collision coverage provided by the GARAGE COVERAGE FORM.

43.

Defendants cannot show that they have sustained a "loss" compensable under the collision coverage provision in the Policy.

44.

In the alternative that Defendants' breaches of the Policy conditions do not void coverage, the Court should declare that AMIC does not owe collision coverage under the Policy.

45.

WHEREFORE, based on the terms and conditions in the Policy (whether expressly mentioned in this Complaint or not), as well as under relevant legal principles and public policy considerations, AMIC seeks the following:

(a) A declaration that AMIC owes no coverage obligation to Defendants for their claims arising from the accident of April 4, 2017;

(b) A jury to resolve all issues so triable; and

(c) Such other and further relief as is just and proper under the circumstances.

FREEMAN MATHIS & GARY, LLP

*/s/ Philip W. Savrin*
Philip W. Savrin
Pro hac vice
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
(770) 818-0000
psavrin@fmglaw.com
Georgia Bar No. 627836


LAW OFFICES OF JAMES R. HUBBARD, PLLC

*/s/ James R. Hubbard*
James R. Hubbard
2308 Environ Way
Chapel Hill, NC 27517
(919) 928-0367
jhubbard@hubbard-law.com
North Carolina Bar No. 13196

Attorneys for Plaintiff